## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| **(1)** | **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| | Plaintiff, | ) ) | |
| | v. | ) ) | Case No. CIV-19-904-F |
| **(1)** | **JOHNSON CONTROLS, INC.** | ) ) | |
| | And | ) ) | |
| **(2)** | **MANPOWERGROUP US, INC.,** | ) ) | |
| | Defendants. | ) | Demand for Jury Trial |

## COMPLAINT

### NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide relief to Victoria Stafford, who was adversely affected by such practices. As alleged in greater particularity below, Ms. Stafford was sexually harassed while working for Defendant Johnson Controls, Inc., (hereinafter "JCI") and Defendant ManpowerGroup US, Inc., (hereinafter "Manpower"), a temporary staffing agency which provided workers to JCI. Stafford reported the harassment to Manpower, but it failed to take prompt and effective action to stop the harassment. JCI and Manpower then discharged Stafford in retaliation for her sexual harassment complaint. Further, when JCI

1

discharged Stafford, it did so for an alleged infraction for which a similar male was not discharged.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 103 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. Venue is proper in this Court pursuant to 42 U.S.C § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

## PARTIES

4. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

5. Defendant Johnson Controls, Inc. ("JCI") is a corporate entity formed pursuant to the laws of Wisconsin and doing business in Norman, Oklahoma.

6. Defendant ManpowerGroup US, Inc. ("Manpower") is a corporate entity formed pursuant to the laws of Wisconsin and doing business in Norman, Oklahoma.

7. At all relevant times, each Defendant has continually been doing business in the State of Oklahoma and each has continuously employed in excess of 15 employees.

8. At all relevant times, each Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

9. More than thirty days prior to the institution of this lawsuit, Victoria Stafford timely filed a charge of discrimination against JCI (Charge No. 564-2018-01731) with the Commission. Stafford's charge alleged violations of Title VII.

10. The Commission sent JCI timely notice of Stafford's charge.

11. On June 28, 2019, the Commission issued to JCI a Letter of Determination finding reasonable cause to believe that JCI violated Title VII.

12. The Letter of Determination invited JCI to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief to Stafford.

13. The Commission engaged in communications with JCI to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The Commission was unable to secure from JCI a conciliation agreement acceptable to the Commission.

15. On September 5, 2019, the Commission issued a Notice of Failure of Conciliation to JCI.

16. All conditions precedent to the institution of this lawsuit against JCI have been fulfilled.

17. More than thirty days prior to the institution of this lawsuit, Victoria Stafford filed timely a charge of discrimination against Manpower (Charge No. 564-2019-00035) with the Commission. Stafford's charge alleged violations of Title VII.

18. The Commission sent Manpower timely notice of Stafford's charge.

19. On June 28, 2019, the Commission issued to Manpower a Letter of Determination finding reasonable cause to believe that Manpower violated Title VII.

20. The Letter of Determination invited Manpower to join with the Commission in informal methods of conciliation to endeavor to eliminate its discriminatory practices and provide appropriate relief to Stafford.

21. The Commission engaged in communications with Manpower to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

22. The Commission was unable to secure from Manpower a conciliation agreement acceptable to the Commission.

23. On September 5, 2019, the Commission issued a Notice of Failure of Conciliation to Manpower.

24. All conditions precedent to the institution of this lawsuit against Manpower have been fulfilled.

## STATEMENT OF FACTS

25. Victoria Stafford began working at JCI in Norman, Oklahoma, in June 2017. She was assigned to JCI through a temporary agency.

26. In or around April 2018, Manpower obtained a contract with JCI to provide temporary employees at JCI's Norman, Oklahoma, facility. Since that time JCI has hired full-time employees at its Norman facility from temporary employees provided by Manpower.

27. Defendants jointly employ the temporary workers Manpower places at JCI's Norman, Oklahoma, facility.

28. JCI determines the number of work hours, daily schedule, work location assignment, and job duties of the temporary workers Manpower places at the facility. JCI has the authority to approve any leave requests and requests for schedule adjustments by employees provided by Manpower.

29. JCI approves the placement of temporary workers by Manpower and informs Manpower when JCI no longer wants a particular temporary employee to work at its facility.

30. At all relevant times, Stafford was assigned by to work on JCI's Production Line 540 on the second shift, 3:30 pm to 12:30 am.

31. JCI controlled all of Stafford's day-to-day functions. It dictated Stafford's work schedule and hours, her daily tasks, and her work-line assignment. JCI provided Stafford job training and its job performance requirements. If Stafford wanted a day off or to move to a different work station, JCI determined whether the request would be granted.

32. Stafford was qualified for her position and performed her job satisfactorily.

33. The highest-ranking Manpower official on-site at JCI's Norman, Oklahoma, facility during the relevant time period was Manpower's Client Delivery Manager, Ken McClurkin. McClurkin did not supervise temporary employees' work, assign tasks, or set their work schedule. He was in his office during normal business hours and had little interaction with Stafford because she worked second shift.

34. In March 2018, JCI employee Phonepresith "Phon" Keovixay began harassing Stafford. Keovixay described to Stafford his sexual encounters with other women, told Stafford when she bent over ". . . you're going to get something stuck in you," and made belittling comments about women. Stafford told two JCI coworkers about Keovixay's harassment, and at least one JCI employee saw the harassment.

35. Around late May 2018, Stafford told the JCI Senior Production Supervisor, Darren Claunch, that she did not like the way Keovixay treated her. Claunch did not ask Stafford for details regarding how Keovixay treated her. Rather, he told Stafford to "man up" and get the work done. Claunch told Keovixay to "leave [Stafford] alone," but Keovixay continued to harass her.

36. On June 6, 2018, Keovixay watched Stafford's daughter drop Stafford off at work and then said to Stafford, "the things I would do to her, I would bend her over," while gesturing in a sexual manner.

37. Stafford was very upset and worried about Keovixay's comments about her daughter, and before her next shift she went to McClurkin, Manpower's Client Delivery Manager, and reported Keovixay's sexual harassment, including his sexual comments

about her daughter, and his derogatory remarks about women, and she asked McClurkin to move her to a different department.

38. McClurkin told Stafford to tell Keovixay to "stop talking like that." He also told Stafford she would need to speak with Claunch, the JCI supervisor, if she wanted to move to a different department, and he told her she would have to prepare a written statement about her harassment complaint.

39. Stafford immediately left McClurkin's office and spoke to her JCI Team Lead, William Lewis, and asked Lewis to move her to a different work station away from Keovixay. In her anger and frustration at Keovixay's ongoing harassment, Stafford told Lewis that if she was forced to continue working with Keovixay she might hit him. Lewis did not grant Stafford's request to move and sent her to work at her usual assigned location near Keovixay.

40. When Stafford arrived at her work station, Keovixay immediately approached her and started to speak to her. Stafford told Keovixay she did not want to hear what he had to say. When Stafford proceeded to ignore him, Keovixay told Stafford she could "get it after work bitch." Stafford again told him to leave her alone.

41. Keovixay continued to threaten Stafford. She reported this to Lewis, who finally assigned her temporarily to a different work area.

42. Stafford worked the remainder of June 7, 2018, and June 8, 2018, without incident.

43. On June 9, 2018, JCI needed Stafford's assistance building parts on her former line, so she returned to work in that area. Within minutes, Keovixay approached

7

Stafford and said, "After work, bitch!" Stafford asked what he said, and he repeated "After work, bitch!"

44. Stafford immediately reported Keovixay's threat to Manpower Lead Ellis Drywater, who reported it to Lewis. Lewis called Keovixay to his office but then allowed Keovixay to return to work in the same area as Stafford.

45. Concerned for her safety, Stafford told a male JCI coworker about the threats and that she was scared to return to her work station. The coworker confronted Keovixay and asked him why he was threatening a woman.

46. Keovixay then reported to Lewis that he had been threatened by the coworker. Keovixay accused the coworker of wanting to fight, pointing his finger at Keovixay and saying, "Let me hear something else, this is your last warning."

47. In response to Keovixay's complaint, Lewis sent Stafford, Keovixay, and the coworker home. Lewis required each of them to submit a written statement before leaving.

48. In her written statement, Stafford stated that Keovixay had been sexually harassing her, including that Keovixay talked about his sexual encounters with women, that he described sexual acts that he wanted to do to Stafford's daughter, and that he belittled women.

49. On June 11, 2018, the JCI Human Resources Manager, Joni Kearns, and McClurkin reviewed the written statements. Kearns interviewed additional employees, including the coworker who confronted Keovixay on Stafford's behalf. But Kearns did

not interview Stafford or seek any information from her regarding Keovixay's sexual harassment or the events leading to her being sent home on June 9, 2018.

50. On June 15, 2018, Kearns and McClurkin notified Stafford that her assignment at JCI was terminated, ending her employment with JCI. Stafford's last day working for JCI was June 9, 2018.

51. JCI's proffered reason for ending Stafford's employment was that she threatened and argued with Keovixay in violation of its "zero-tolerance" violence policy.

52. Manpower states that it ended Stafford's work assignment at JCI at because JCI requested that she be "released" from her position and due to Stafford's conduct as described by JCI.

53. Defendants' reasons set forth in paragraphs 51 and 52 are pretexts for unlawful discrimination based on sex and in retaliation for Stafford's sexual harassment complaint.

54. JCI did not take any disciplinary action against the male coworker whom Keovixay accused of making threats and JCI permitted him to return to work.

55. After JCI and Manpower removed Stafford from her position at JCI, Stafford sought other temporary assignments through Manpower, but her earnings were reduced, resulting in her suffering wage loss. It took Manpower three weeks to send Stafford to another job assignment, and that position only lasted a few weeks. After that, the positions Manpower placed her in were generally short term and she experienced unemployment between the assignments.

## STATEMENT OF CLAIMS

## COUNT I

### (Title VII – Sexual Harassment)

56. This Count is lodged against Defendant Manpower only.

57. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the forgoing paragraphs of this Complaint as fully set forth herein.

58. Keovixay's repeated and pervasive recounting of his sexual encounters, sexual acts he would perform on Stafford and her daughter, and belittling comments about women were intentional and intended to negatively impact Stafford. This behavior was unwelcome, frightening, highly offensive, egregious, humiliating, and intimidating.

59. Keovixay's sexually unwelcome comments were sufficiently severe and pervasive to create a sexually hostile work environment for Stafford.

60. Manpower knew about Keovixay's sexual harassment and failed to take reasonable steps to prevent the unwelcome conduct.

61. Despite having knowledge of the harassment, Manpower failed to take reasonable action to investigate and end the harassment.

62. Manpower unlawfully deprived Stafford of equal employment opportunities because of her sex in violation of 42 U.S.C. § 2000e-2(a)(1).

63. As a direct and proximate result of Manpower's violation of 42 U.S.C. §2000e-(2)(a)(1), Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

64. The unlawful employment practices complained of in the foregoing paragraphs were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

## COUNT II

### (Title VII – Retaliation)

65. This Count is lodged against both Defendants.

66. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

67. Stafford engaged in activity protected under Title VII by verbally reporting sexual harassment to Manpower and submitting to both Defendants a detailed written statement describing the harassment.

68. Within days after Stafford's protected activity, JCI retaliated against Stafford by telling Manpower to remove Stafford from her employment at JCI, effectively terminating her employment at JCI.

69. Also within days after Stafford's protected activity, Manpower retaliated against Stafford by ending her assignment at JCI, terminating her employment at JCI.

70. But for Stafford's protected activity, Defendants would not have terminated her assignment and employment at JCI.

71. As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000e-3, Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

72. Defendants' unlawful actions were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

## COUNT III

### (Sex Discrimination)

73. This Count is lodged against Defendant JCI only.

74. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

75. Stafford is a woman and was qualified for her position at JCI.

76. JCI's decision to release Stafford from her assignment was motivated by her sex.

77. JCI stated it released Stafford from her assignment because of misconduct in violation of JCI's employment policies, but JCI did not terminate or otherwise discipline a male coworker who engaged in similar or worse conduct than that alleged by Stafford.

78. JCI unlawfully deprived Stafford of equal employment opportunities because of her sex in violation of 42 U.S.C. § 2000e-2(a)(1).

79. As a direct and proximate result of JCI's violation of 42 U.S.C. §2000e-(2)(a)(1), Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

80. JCI's unlawful actions were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.   Issue a permanent injunction enjoining each Defendant, their subsidiaries, related entities, officers, successors, assigns, and all persons in active concern or participation with either Defendant, from engaging in unlawful employment practices which discriminate on the basis of sex, including discrimination, harassment and the creation of a hostile work environment based on sex, and retaliating against individuals for reporting the same, in violation of 42 U.S.C. § 2000e.

B.   Order each Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for female workers and eradicate the effects of its past and present unlawful employment practices.

C.   Order each Defendant to make Stafford whole by providing appropriate back pay, lost benefits, and prejudgment interest, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of Defendants' unlawful employment practices.

D.   Order each Defendant to make Stafford whole by providing compensation for past, present and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

E.   Order each Defendant to make Stafford whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described

above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

F.	Order each Defendant to pay Stafford punitive damages for its malicious and reckless conduct as described above, in an amount to be determined at trial.

G.	Grant such relief as the Court deems necessary and proper in the public interest.

H.	Award the Commission its costs for this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN
Regional Attorney

C. FELIX MILLER
Supervisory Trial Attorney

s/*Lauren W. Johnston*
LAUREN W. JOHNSTON, OBA # 22341
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Oklahoma City Area Office

215 Dean A. McGee Ave, Ste. 524
Oklahoma City, OK 73102
Phone: (405) 231-5829; Fax: (405) 231-4375
lauren.johnston@eeoc.gov

*Attorneys for Plaintiff Equal Employment Opportunity Commission*