## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | |
| **JOHNSON CONTROLS, INC.,** | § § | **CASE NO. 5:19-CV-00904-F** |
| **and** | § § | |
| **MANPOWERGROUP US INC.,** | § § | |
| **Defendants.** | § § | |

## DEFENDANT MANPOWER'S MOTION TO DISMISS
## AND BRIEF IN SUPPORT

Defendant ManpowerGroup US Inc. ("Manpower") moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   In support of its Motion, Manpower respectfully shows the Court as follows:

### I.    NATURE AND SUMMARY OF THE CASE

Plaintiff Equal Employment Opportunity Commission ("Plaintiff") brings claims against Manpower on behalf of Victoria Stafford ("Stafford") for alleged sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. However, the allegations in Plaintiff's own Complaint defeat these claims. With regard to the sexual harassment claim, the Complaint makes clear that Plaintiff cannot establish a basis for holding Manpower liable for any alleged harassment that occurred while Stafford was on assignment. With regard to the retaliation claim, Plaintiff rightly contends that Defendant

Johnson Controls, Inc. ("JCI")[1], and *not* Manpower, approved the placement and removal of temporary workers at its facility. As acknowledged by Plaintiff's own allegations, Manpower did not commit an adverse employment action against Stafford, and her retaliation claim must be dismissed.

In short, Plaintiff's Complaint does not state valid claims against Manpower for sexual harassment or retaliation under Title VII.[2] Plaintiff's Complaint against Manpower should therefore be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    KEY FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

The following factual allegations in Plaintiff's Complaint form the basis of Plaintiff's claims against Manpower in this matter:[3]

1.    Manpower is a temporary staffing agency that connects individuals looking for work with employers looking to meet their staffing needs.  (Plaintiff's Complaint ("Compl."), ¶ 26).

2.    Stafford began working at JCI in June 2017. Stafford was assigned to work at JCI through a previous staffing agency, and not Manpower. (Compl., ¶ 25).

3.    In March 2018, JCI employee[4] Phonepresith "Phon" Keovixay allegedly began harassing Stafford. At the time, Stafford allegedly complained to two JCI coworkers about the harassment. (Compl., ¶ 34).

---

[1] Undersigned counsel does not represent Defendant JCI.
[2] Plaintiff's Third Cause of Action is lodged against Defendant JCI only.

4.    In April 2018—after Stafford's alleged complaint about Keovixay—Defendant Manpower obtained a contract with JCI to provide temporary employees at JCI's Norman, Oklahoma facility, where both Stafford and Keovixay worked. (Compl., ¶¶ 25, 26, 34).

5.    JCI determines the number of work hours, daily schedules, _work location assignment_, and job duties of the temporary works Manpower places at the facility. (Compl., ¶ 28 (emphasis added)).

6.    As Plaintiff acknowledges in its Complaint, JCI approves the placement of temporary workers by Manpower and informs Manpower when JCI no longer wants a particular employee to work at its facility. (Compl., ¶ 29).

7.    JCI controlled all of Stafford's day-to-day functions. It dictated Stafford's work schedule and hours, her daily tasks and her work-line assignment. If Stafford wanted a day off or to move to a different work station, JCI—and _not_ Manpower—determined whether the request would be granted. (Compl., ¶ 31).

8.    In late May 2018, Stafford told JCI Senior Production Supervisor, Darren Claunch, that "she did not like the way Keovixay treated her." (Compl., ¶ 35). Plaintiff alleges that Claunch did not ask for any details. (_Id._).[5]

---

[3] Manpower disputes many of these allegations, but assumes they are true for purposes of this Motion only.

[4] Plaintiff does not allege that Keovixay was a supervisor or otherwise controlled the terms or conditions of Plaintiff's employment or placement at JCI.

[5] Plaintiff does _not_ allege that Stafford provided any further details to Claunch about Keovixay's alleged behavior.

9.     On June 6, 2018, Keovixay allegedly made sexually explicit comments about Stafford's daughter, and Stafford then reported those comments to Manpower's Client Delivery Manager Ken McClurkin. (Compl., ¶¶ 36-37).

10.     McClurkin informed Stafford that she should prepare a written statement about the harassment and that Stafford "would need to speak with Claunch, the JCI supervisor, if she wanted to move to a different department." (Compl., ¶ 38).

11.     Stafford then asked JCI to move her to a different work station, but JCI Team Lead William Lewis allegedly refused to move Stafford initially. (Compl., ¶ 39). Plaintiff does *not* contend that Manpower was aware of—or played any role in—that decision by the JCI Team Lead.

12.     However, the JCI Team Lead did ultimately transfer Stafford to another work area after Keovixay approached Stafford again and allegedly threatened her by telling Stafford she would "get it after work," and by calling her a "bitch." (Compl., ¶ 40). Plaintiff does *not* appear to contend that these comments were directed at or related to Stafford's gender, and does *not* contend that Manpower was aware of any of these developments.

13.     Even though Stafford was transferred out of Keovixay's area, she returned to that area on June 9, 2018, where Keovixay approached Stafford and allegedly threatened her again. (Compl., ¶ 43).[6]

---

[6] As with many of Plaintiff's other allegations, Plaintiff does *not* allege that Manpower was aware that Stafford returned to Keovixay's area at all.

14.    Stafford reported the threat to Manpower Lead Ellis Drywater. Drywater then reported the issue to JCI Team Lead Lewis. (Compl., ¶ 44).

15.    On the same day, a confrontation arose between Stafford, Keovixay and another coworker, who was allegedly defending Stafford. (Compl., ¶¶ 45-46, 50). After that confrontation, Keovixay reported to Lewis that he had been threatened by the other coworker. (*Id.* at ¶ 46).

16.    Later that day, JCI Team Lead Lewis sent Stafford, Keovixay, and the coworker home and required each of them to submit a written statement describing the confrontation before leaving. (Compl., ¶¶ 47, 50).

17.    On June 11, 2018, JCI Human Resources Manager Joni Kearns, and Manpower Client Delivery Manager McClurkin reviewed the written statements, and Kearns interviewed additional employees. (Compl., ¶ 49).

18.    Although Plaintiff alleges that JCI did not take any disciplinary action against the male coworker whom Keovixay accused of making threats, (Compl., ¶ 54), the Complaint otherwise contains no factual allegations regarding the outcome of the investigation or the employment status of Keovixay.[7]

---

[7] Upon information and belief, JCI terminated Keovixay's employment at the same time it directed Manpower to end Stafford's work assignment.

19.    On June 15, 2018, Stafford was notified by JCI that it was ending her temporary assignment because she violated JCI's workplace violence policy.[8] (Compl., ¶¶ 50-52).

20.    Plaintiff does *not* contend that Manpower terminated Stafford's employment. Indeed, Plaintiff correctly alleges that Manpower informed Stafford that her assignment was ended at the request of JCI. (Compl., ¶¶ 52, 55).

21.    Plaintiff alleges that after JCI ended her temporary assignment, Manpower placed Stafford in *multiple* subsequent job assignments. (Compl., ¶ 55).

## III.    APPLICABLE LEGAL STANDARD

Manpower moves for dismissal of Plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), based on Plaintiff's failure to state a claim upon which relief may be granted. Under Rule 12(b)(6), dismissal of a plaintiff's claims is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Mock v. T. G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

When considering a Rule 12(b)(6) motion, the Court must accept all "well-pleaded factual allegations" as true, and view them in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "Conclusory allegations," however, need not be accepted as true simply because they have been pled in the Complaint.

---

[8] Presumably for her role in the altercation between herself, Keovixay, and the third

*Moffett v. Halliburton Energy Services, Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the forgiving notice pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-51 (2009).

Although the court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party, a claim which is insufficient as a matter of law must be dismissed under Rule 12(b)(6). *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000). In the present case, Plaintiff fails to establish that the factual allegations in its complaint, even if true, give rise to valid causes of action against Defendant Manpower. Plaintiff's claims against Manpower must therefore be dismissed, with prejudice and in their entirety, pursuant to Rule 12(b)(6).

## IV.    ARGUMENT AND CITATION TO AUTHORITIES

### A.    Plaintiff Fails To State A Claim Against Manpower for Sexual Harassment in Violation of Title VII.

A hostile work environment that violates Title VII is one involving harassment based on a protected characteristic, such as gender, that is "sufficiently severe or pervasive to alter the conditions of [the individual's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Severity and pervasiveness are evaluated according to the totality of circumstances,

coworker.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L.Ed. 2d 295 (1993), considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). A plaintiff must also establish a basis for holding the employer liable, such as proof that the employer "knew or should have known of the conduct and failed to stop it." *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1988).

Here, Plaintiff's Complaint fails to state a claim against Manpower for two reasons. Most importantly, Plaintiff fails to allege a basis for holding Manpower liable, "such as proof that the employer 'knew or should have known of the conduct and failed to stop it.'" *Ellerth*, 524 U.S. at 759. Rather, Plaintiff's Complaint alleges that each of the two times that Manpower was made aware of the alleged harassment against Stafford, the Manpower representatives reported the harassment to JCI (Compl., ¶ 44), and/or advised Stafford to prepare a written statement and inform JCI if she wanted to seek a transfer. (*Id.* at ¶ 38). Plaintiff also specifically alleges that it was JCI—and *not* Manpower—which determined Stafford's work location assignment and job duties and whether to grant Stafford's request for a move to a different work station. (*Id.* at ¶¶ 28, 31). Further, it was JCI—and *not* Manpower—which determined both when and how Stafford's job assignment would end at JCI. (*Id.* at ¶¶ 29, 52). Finally, Plaintiff admits in its Complaint

that Stafford's alleged harasser—Keovixay—was a JCI employee, and *not* a Manpower employee.

Thus, it is unclear what Plaintiff believes that Manpower could have done other than *exactly what its representatives did*—report the alleged harassment immediately to JCI and advise Stafford to prepare a written statement and seek a transfer (which was granted). Plaintiff has not alleged any facts—other than mere conclusory statements insufficient to withstand dismissal—to show that Manpower can be held liable under these circumstances.

Additionally, even if Plaintiff had somehow alleged that Manpower should be liable, Plaintiff's allegations demonstrate that the alleged comments by her JCI coworker Keovixay were *not* severe or pervasive under the Tenth Circuit's standard. The totality of Plaintiff's allegations regarding Keovixay's alleged sexual harassment of Stafford is as follows:

- In March 2018, Keovixay allegedly described to Stafford his "sexual encounters" with other women, and told Stafford that she would get "something stuck in her" when "she bent over." (Compl., ¶ 34). Plaintiff also alleges that, at this time, Keovixay made other unspecified "belittling comments about women." (*Id*.).

- Three months later, over a span of three days, Keovixay allegedly made a lewd comment about the "things he would do" to Stafford's daughter, and then twice called Stafford a "bitch." (*Id*. at ¶¶ 36-43).

Boiled down, then, Plaintiff alleges a total of two instances of inappropriate conversations regarding sexual behavior by JCI employee Keovixay: (1) a conversation in March 2018 during which Keovixay talked about his sexual encounters, made

belittling comments towards women, and told Stafford that she would get "something stuck in her" when "she bent over;" and (2) a conversation three months later during which Keovixay made a lewd comment about Stafford's daughter.[9] But these two conversations are insufficient under Tenth Circuit law to state a cognizable claim of sexual harassment under Title VII. *See Lovelace v. Levy Okla., Inc.*, Case No. CIV-17-775-D, 2019 WL 1757544, at \*4 (W.D. Okla. Apr. 19, 2019) (noting that where a plaintiff shows "only a few instances of sexually suggestive comments," there can be no reasonable conclusion that the plaintiff was experiencing pervasive sexual harassment.) (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 666 (10th Cir. 2012) and *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005))).

For these reasons, and as set forth more fully above, Plaintiff fails to state a valid claim against Manpower for sexual harassment in violation of Title VII, and therefore Count I against Manpower should be dismissed with prejudice.

**B.    Plaintiff Fails To State A Claim Against Manpower for Retaliation In Violation of Title VII.**

Plaintiff also fails to state a claim against Manpower for retaliation. Title VII forbids retaliation against an employee because she "opposed" a practice made unlawful

---

[9] Although Plaintiff also alleges that, during this time, Keovixay twice called Stafford a "bitch" and made reference to Stafford "getting it after work," it is unclear how or why Plaintiff contends these comments were made because of or are related to Stafford's gender. Those alleged comments are therefore insufficient as a matter of law to support a sexual harassment claim under Title VII. *See, e.g., Williams v. Ennis*, Case No. 18-06250, 2019 WL 2524692, at \*5 (E.D. La. June 19, 2019) (explaining that the use of inappropriate language does not constitute discrimination or harassment when not based on gender).

by Title VII, or because she "participated ... in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Where—as here—there is no allegation of direct evidence of retaliation, the Court analyzes the claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973); *Jeffries v. State of Kansas,* 147 F.3d 1220, 1231 (10th Cir. 1998).

Following this framework, an employee must first present a *prima facie* case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. *Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir.2003). If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination. *Id.*

Here, Plaintiff fails to allege a *prima facie* case of retaliation against Manpower. To state a *prima facie* case of retaliation, Plaintiff must allege that: (1) she engaged in protected opposition to discrimination; (2) Manpower took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action. *Jones,* 349 F.3d at 1269; *Kendrick v. Penske Trans. Servs, Inc.,* 220 F.3d 1220, 1234 (10th Cir. 2000). Plaintiff has not alleged that Manpower could have— or did—take any adverse employment action against her.

In her claim for retaliation, Plaintiff alleges that "within days after Stafford's protected activity, Manpower retaliated against Stafford by ending her assignment at JCI,

terminating her employment at JCI." (Compl., ¶ 69). However, as set forth above, Plaintiff's Complaint specifically alleges that it was JCI, and *not* Manpower, which determined when and how Stafford's job assignment would end at JCI. (*Id.* at ¶ 29). Additionally, Plaintiff does *not* contend that Manpower terminated Stafford's employment. Indeed, Plaintiff alleges that Manpower placed Stafford at *multiple* subsequent job assignments. (Compl., ¶ 55).

Thus, this case is similar to *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680 (M.D.N.C. 1997). There, the court dismissed a retaliation claim against a staffing agency, in which the plaintiff alleged retaliation for reporting alleged sexual harassment. The court held that plaintiff failed to allege adverse action on the staffing agency's part, stating: "Here, all that Plaintiff has alleged is that [staffing agency] instructed her not to return to her assignment[ ]. In the unique circumstances present in this case, when dealing with a temporary employment agency, such an employment action, by itself, is not adverse." *Id.* at 686. The court further noted that "[p]laintiff nowhere alleges that [staffing agency] discharged her, refused to assign her to other positions, only offered her assignments inferior to her position at [employer] or other similar circumstances which would constitute an adverse employment decision. Therefore, the court finds that Plaintiff has failed to state a claim for retaliation in violation of Title VII . . . ." *Id.* at 686-87.

Similarly, here, Plaintiff does *not* allege that Manpower discharged Stafford, nor does Plaintiff allege that Manpower refused to assign Stafford to other positions, or only offered her assignments inferior to her position at JCI. In fact, Plaintiff alleges the

opposite—that following JCI's request to remove Stafford from her assignment at JCI, Manpower placed her at *multiple* other work assignment.

Plaintiff has failed to allege that Manpower took any adverse employment action against Stafford, and therefore fails to state a *prima facie* case of retaliation against Manpower.[10] Accordingly, Plaintiff fails to state a valid claim against Manpower for retaliation in violation of Title VII, and therefore Count II against Manpower should be dismissed with prejudice.

## V.    CONCLUSION

Plaintiff's Complaint fails to state a claim against Manpower for either sexual harassment or retaliation in violation of Title VII. Therefore, Manpower respectfully requests that the Court dismiss the claims against it, pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice to refiling same, and that the Court award Defendant Manpower all additional relief to which it may be entitled.

---

[10] *See also McQueen v. Wells Fargo Home Mortg.*, 955 F.Supp.2d 1256, 1271-73 (N.D. Ala. 2013) (holding that a plaintiff cannot maintain a cognizable action for discrimination and retaliation against a staffing agency where "there is no evidence that [the staffing agency] had anything to do with the plaintiff's termination," and where the staffing agency's only action was to comply with the client's request that the plaintiff be removed from her work assignment); *Watson v. Adecco Employment Servs., Inc.*, 252 F.Supp.2d 1347, 1356-58 (M.D. Fla. 2003) (holding that staffing agency was not liable for following the wishes of its client absent any evidence of an adverse employment action on the part of the agency); *Neal v. Manpower Int'l, Inc.*, Case No. 3:00-CV-277-LAC, 2001 WL 1923127 (N.D. Fla. Sept. 17, 2001) (finding no adverse employment action where the plaintiff's work assignment was ended only at the request of the client).

Dated: December 3, 2019                    Respectfully submitted,


                                           */s/ Jonathan G. Rector*
                                           Jonathan G. Rector, OBA No. 30691
                                           LITTLER MENDELSON, P.C.
                                           A Professional Corporation
                                           2001 Ross Avenue
                                           Suite 1500, Lock Box 116
                                           Dallas, TX  75201.2931
                                           214.880.8100
                                           214.880.0181 (Fax)

                                           ATTORNEY FOR DEFENDANT
                                           MANPOWERGROUP US INC.


**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2019, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.


                                           /s/ *Jonathan G. Rector*
                                           Jonathan G. Rector