## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 19-904-F** |
| **(1) JOHNSON CONTROLS, INC.** | ) ) | |
| **And** | ) ) | |
| **(2) MANPOWERGROUP US, INC.,** | ) ) | |
| **Defendants.** | ) | **Demand for Jury Trial** |

## AMENDED COMPLAINT[1]

### NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex

and to provide relief to Victoria Stafford, who was adversely affected by such practices.

As alleged in greater particularity below, Ms. Stafford was sexually harassed while

working for Defendant Johnson Controls, Inc., (hereinafter "JCI") and Defendant

ManpowerGroup US, Inc., (hereinafter "Manpower"), a temporary staffing agency which

provided workers to JCI. Stafford reported the harassment to Manpower, but it failed to

take prompt and effective action to stop the harassment. JCI and Manpower then

discharged Stafford in retaliation for her sexual harassment complaint. Further, when JCI

---

[1] This Amended Complaint is filed pursuant to Fed.R.Civ.P. 15(a)(1)(B).

discharged Stafford, it did so for an alleged infraction for which a male who engaged in similar conduct was not discharged.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.      This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 103 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.      Venue is proper in this Court pursuant to 42 U.S.C § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

## PARTIES

4.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

5.      Defendant Johnson Controls, Inc. ("JCI") is a corporate entity formed pursuant to the laws of Wisconsin and doing business in Norman, Oklahoma.

6.      Defendant ManpowerGroup US, Inc. ("Manpower") is a corporate entity formed pursuant to the laws of Wisconsin and doing business in Norman, Oklahoma.

7.      At all relevant times, each Defendant has continually been doing business in the State of Oklahoma and each has continuously employed in excess of 15 employees.

8.      At all relevant times, each Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

9.      More than thirty days prior to the institution of this lawsuit, Victoria Stafford timely filed a charge of discrimination against JCI (Charge No. 564-2018-01731) with the Commission. Stafford's charge alleged violations of Title VII.

10.     The Commission sent JCI timely notice of Stafford's charge.

11.     On June 28, 2019, the Commission issued to JCI a Letter of Determination finding reasonable cause to believe that JCI violated Title VII.

12.     The Letter of Determination invited JCI to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief to Stafford.

13.     The Commission engaged in communications with JCI to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14.     The Commission was unable to secure from JCI a conciliation agreement acceptable to the Commission.

15.     On September 5, 2019, the Commission issued a Notice of Failure of Conciliation to JCI.

16.     All conditions precedent to the institution of this lawsuit against JCI have been fulfilled.

3

17.     More than thirty days prior to the institution of this lawsuit, Victoria Stafford filed timely a charge of discrimination against Manpower (Charge No. 564-2019-00035) with the Commission. Stafford's charge alleged violations of Title VII.

18.     The Commission sent Manpower timely notice of Stafford's charge.

19.     On June 28, 2019, the Commission issued to Manpower a Letter of Determination finding reasonable cause to believe that Manpower violated Title VII.

20.     The Letter of Determination invited Manpower to join with the Commission in informal methods of conciliation to endeavor to eliminate its discriminatory practices and provide appropriate relief to Stafford.

21.     The Commission engaged in communications with Manpower to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

22.     The Commission was unable to secure from Manpower a conciliation agreement acceptable to the Commission.

23.     On September 5, 2019, the Commission issued a Notice of Failure of Conciliation to Manpower.

24.     All conditions precedent to the institution of this lawsuit against Manpower have been fulfilled.

## **STATEMENT OF FACTS**

25.     Victoria Stafford began working at JCI in Norman, Oklahoma, in June 2017. She was assigned to JCI through a temporary agency.

26.     In or around April 2018, Manpower obtained a contract with JCI to provide temporary employees at JCI's Norman, Oklahoma, facility. The temporary employees, including Stafford, were hired by Manpower.  JCI has hired full-time employees at its Norman facility from temporary employees provided by Manpower.

27.     Defendants jointly employ the temporary workers Manpower places at JCI's Norman, Oklahoma, facility.

28.     JCI determines the number of work hours, daily schedule, production line assignment, and job duties of the temporary workers Manpower places at the facility.

29.     JCI has the authority to approve any leave requests and requests for schedule adjustments by employees provided by Manpower.

30.     JCI requests the placement of temporary workers by Manpower and informs Manpower when JCI no longer wants a particular temporary employee to work at its facility.

31.     However, Manpower can choose not to follow JCI's recommendations to remove a joint temporary employee for cause.

32.     At all relevant times, Stafford was assigned to work on JCI's Production Line 540 on the second shift, 3:30 pm to 12:30 am.

33.     JCI controlled all of Stafford's day-to-day functions. It dictated Stafford's work schedule and hours, her daily tasks, and her production line assignment. JCI provided Stafford job training and its job performance requirements. If Stafford wanted a day off or to move to a different work station, JCI determined whether the request would be granted.

34.     Stafford was qualified for her position and performed her job satisfactorily.

35.     The highest-ranking Manpower manager on-site at JCI's Norman, Oklahoma, facility during the relevant time period was Manpower's Client Delivery Manager, Ken McClurkin.

36.     Temporary employees were directed to contact McClurkin for a variety of reasons, such as if they were late or unable to report to work, if they were sick and unable to complete a job, if the work environment was unsafe or if Manpower's EEO or Anti-Harassment Policy was being violated.

37.     Temporary employees were directed to report harassment to McClurkin, if they felt they were being discriminated against or harassed by a Manpower client.

38.     Manpower has the ability to inform JCI of any problems that Manpower employees working at JCI are experiencing.

39.     McClurkin did not supervise temporary employees' work, assign tasks, or set their work schedule.

40.     McClurkin was in his office during normal business hours and had little interaction with Stafford because she worked second shift.

41.     Stafford was assigned to the Online Wire station of the 540 Production Line.  This line manufactured air-conditioning and heating units.

42.     There were two employees assigned to Online Wire. The two employees rotated building wire parts and wiring the units. The unit then moved several yards down the production line, where additional employees assembled other components of the unit.

43.     In March 2018, JCI employee Phonepresith "Phon" Keovixay began harassing Stafford while they were paired together at Online Wire. On a near daily basis, Keovixay made sexually explicit comments and derogatory gender-based comments to Stafford which she found unwelcome, embarrassing, frightening, intimidating and distressing.

44.     Keovixay described to Stafford his sexual encounters with other women, and/or asked Stafford about her own sexual experiences, nearly every day. For example, Keovixay told Stafford he was dating a girl who "can't suck my dick long enough." Stafford told Keovixay "nobody wants to hear about that," to which he responded, "you don't suck dick? You act like you suck dick."

45.     Stafford told Keovixay to "stop that," referring to his comments, but he did not stop.  Later he asked Stafford, "you really don't suck dick?"  Stafford told him it was none of his business.

46.     On multiple occasions, when Stafford bent over to pick an item up off the floor, Keovixay told Stafford "you're going to get something stuck in you."  He also told Stafford (who is Native American), "Indians have flat asses but your ass isn't the average Indian ass, I would tear it up."

47.     Keovixay also, on multiple occasions, made belittling comments about women. For instance, Keovixay refused at times to build parts for Online Wire, telling Stafford "you build the parts, that's women's work."

48.     Around late May 2018, Stafford told the JCI Senior Production Supervisor, Darren Claunch, that she did not like the way Keovixay treated her. Claunch did not ask

Stafford for details regarding how Keovixay treated her. Rather, he told Stafford to "man up" and get the work done. Claunch told Keovixay to "leave [Stafford] alone," but Keovixay continued to harass Stafford multiple times a week describing his sexual encounters, asking about her sexual encounters, and belittling women.

49.     On June 6, 2018, Keovixay watched Stafford's daughter drop Stafford off at work and then said to Stafford, "the things I would do to her, I would bend her over," while gesturing in a sexual manner.

50.     Stafford was very upset and worried about Keovixay's comments about her daughter, particularly in light of the relentless sexual and gender-based comments Keovixay made to Stafford beginning in March 2018.

51.     On June 7, 2018, before her shift, Stafford went to McClurkin, Manpower's Client Delivery Manager, and told him about Keovixay's sexual harassment over the previous months, including the sexual comments, his sexual comment about her daughter, and his belittling of women. She asked McClurkin to move her to a different department.

52.     McClurkin told Stafford that she needed to tell Keovixay to "stop talking like that." He also told Stafford she would need to speak with Claunch, the JCI supervisor, if she wanted to move to a different department, and he told her she would have to prepare a written statement about her harassment complaint.

53.     Stafford immediately left McClurkin's office and spoke to her JCI Team Lead, William Lewis. Stafford asked Lewis to move her to a different work station away from Keovixay. In her anger and frustration at Keovixay's ongoing harassment, Stafford told Lewis that if she was forced to continue working with Keovixay she might hit him.

54.     Lewis did not ask Stafford why she wished to be moved.  Lewis did not contact McClurkin about Stafford's request. Lewis did not grant Stafford's request to move and sent her to work at her usual assigned location near Keovixay, despite knowing that there was a problem with them working in close proximity

55.     After Stafford complained, McClurkin and Manpower did nothing to prevent or protect Stafford from the sexually harassing actions of Keovixay, although it was within their ability to do so. McClurkin and Manpower did not notify JCI of Stafford's sexual harassment complaint; they did not contact Claunch to inform him of Stafford's sexual harassment complaint; they did not inform JCI's human resources personnel of Stafford's complaint; they did not request or demand that JCI reassign Keovixay so that he had no contact with Stafford; they did not request or demand that JCI investigate Stafford's complaint or take any disciplinary action or discharge Keovixay; they did not follow up to determine whether Stafford was still working in close proximity to Keovixay; they did not follow up to see whether Stafford was still being harassed. In short, they did nothing but leave it up to Stafford to address the situation with JCI and Keovixay.

56.     When Stafford arrived at her work station later on June 7, 2018, Keovixay immediately approached her and started to speak to her. Stafford told Keovixay she did not want to hear what he had to say. When Stafford proceeded to ignore him, Keovixay told Stafford she would "get it after work bitch." Stafford again told him to leave her alone.

57.     Keovixay continued to threaten Stafford and she reported his actions and threats to Lewis, who finally assigned her temporarily to a different work area.

58.     Stafford worked the remainder of June 7, 2018, and June 8, 2018, without incident.

59.     On June 9, 2018, JCI needed Stafford's assistance building parts at Online Wire, so she returned to work in that area. Within minutes, Keovixay approached Stafford and said, "After work, bitch!" Stafford asked what he said, and he repeated "After work, bitch!"

60.     Stafford immediately reported Keovixay's threat to Manpower Lead Ellis Drywater, who reported it to Lewis. Lewis called Keovixay to his office but then allowed Keovixay to return to work in the same area as Stafford and took no other action.

61.     Concerned for her safety, Stafford told Alford Benford, a male JCI coworker, about the threats and that she was scared to return to her work station. Benford confronted Keovixay and asked him why he was threatening Stafford.

62.     Keovixay then reported to Lewis that he had been threatened by Benford. Keovixay accused Benford of wanting to fight, pointing his finger at Keovixay and saying, "Let me hear something else, this is your last warning."

63.     Lewis called Claunch, who contacted JCI Human Resources Manager Joni Kearns for guidance regarding this incident. Kearns contacted McClurkin and suggested Stafford be sent home, along with Keovixay and Benford. McClurkin agreed. Lewis required each of them to submit a written statement before leaving.

64.     McClurkin did not contact Stafford to discuss the incident before agreeing to send her home. He did not notify Kearns of Stafford's complaint just two days before.

65.     In her statement, Stafford wrote that Keovixay had been sexually harassing her, including that Keovixay talked about his sexual encounters with women using explicit sexual descriptions, that he described sexual acts that he wanted to perform with Stafford and her daughter, and that he belittled women.

66.     On June 11, 2018, Kearns and McClurkin reviewed the written statements and Kearns interviewed additional employees, including Benford.

67.     Kearns told McClurkin he should interview Stafford, but neither Kearns or McClurkin interviewed Stafford or sought any information from her regarding Keovixay's sexual harassment or the events leading to her being sent home on June 9, 2018.

68.     Following the interviews, Kearns terminated Keovixay and allowed Benford to return to work.

69.     Kearns recommended that McClurkin remove Stafford from her JCI assignment, terminating her employment at JCI.

70.     As a Manpower manager, McClurkin had the ability to discuss the situation with Kearn and oppose Kearn's recommendation to terminate Stafford's employment with JCI.

71.     McClurkin was aware that Stafford had reported ongoing sexual harassment by Keovixay, but nevertheless he accepted Kearns recommendation and removed Stafford from her JCI assignment that she had worked for a year.

11

72.     McClurkin did not tell Kearns about Keovixay's harassment of Stafford, he did not oppose Stafford's removal, and he did not question whether JCI ordered Stafford's removal in retaliation for her complaint of sexual harassment.

73.     Manpower, through McClurkin, collaborated with Kearns and JCI in removing Stafford from her year-long assignment at JCI.

74.     Upon information and belief, McClurkin and Manpower hold the final authority to remove a temporary employee from a JCI assignment for alleged misconduct.

75.     Kearns has admitted that, if McClurkin declined to remove Stafford from her JCI assignment, this would cause a "contract issue" and presumably have negative consequences for Manpower in its relationship with JCI.

76.     On June 15, 2018, Kearns and McClurkin notified Stafford that her assignment at JCI was terminated, ending her employment with JCI. Stafford's last day working for JCI was June 9, 2018.

77.     JCI's proffered reason for ending Stafford's employment was that she threatened and argued with Keovixay in violation of its "zero-tolerance" violence policy.

78.     Manpower states that it ended Stafford's work assignment at JCI because JCI requested that she be "released" from her position and due to Stafford's conduct as described by JCI.

79.     Defendants' reasons set forth in paragraphs 60 and 61 are pretexts for unlawful discrimination based on sex and in retaliation for Stafford's sexual harassment complaint.

80.     JCI did not take any disciplinary action against Benford, despite Keovixay's accusation that Benford threatened him. JCI permitted Benford to return to work.

81.     JCI and Manpower did not pay Stafford for the time she was sent home waiting for JCI and Manpower's decision to terminate her employment.

82.     After JCI and Manpower removed Stafford from her position at JCI, Stafford sought other temporary assignments through Manpower, but her earnings were reduced, resulting in her suffering wage loss.

83.     Manpower did not send Stafford to another job assignment for three weeks, and that position only lasted a few weeks. After that, the positions Manpower placed her in were generally short term and she experienced approximately 19 weeks of unemployment between the assignments.

84.     Her lost income resulted in Stafford losing her home and sleeping in her car for a period of time.

## STATEMENT OF CLAIMS

## COUNT I

## (Title VII – Sexual Harassment)

85.     This Count is lodged against Defendant Manpower only.

86.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the forgoing paragraphs of this Complaint as fully set forth herein.

87.     Keovixay's repeated and pervasive recounting of his sexual encounters, sexual acts he would perform on Stafford and her daughter, and belittling comments

about women were intentional and intended to negatively impact Stafford. This behavior was unwelcome, frightening, highly offensive, egregious, humiliating, and intimidating.

88.     Keovixay's sexually unwelcome comments were sufficiently severe and pervasive to create a sexually hostile work environment for Stafford.

89.     Manpower knew about Keovixay's sexual harassment when Stafford complained to McClurkin on June 7, 2018.

90.     Manpower did nothing to prevent the unwelcome conduct after Stafford complained to McClurkin.

91.     Despite having knowledge of the harassment, Manpower failed to take reasonable action to investigate and end the harassment, as described above.

92.     Manpower unlawfully deprived Stafford of equal employment opportunities because of her sex in violation of 42 U.S.C. § 2000e-2(a)(1).

93.     As a direct and proximate result of Manpower's violation of 42 U.S.C. §2000e-(2)(a)(1), Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

94.     The unlawful employment practices complained of in the foregoing paragraphs were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

## COUNT II

### (Title VII – Retaliation)

95.     This Count is lodged against both Defendants.

96.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

97.    Stafford engaged in activity protected under Title VII by verbally reporting sexual harassment to Manpower and submitting to both Defendants a detailed written statement describing the harassment.

98.    Within days after Stafford's protected activity, JCI retaliated against Stafford by telling Manpower to remove Stafford from her employment at JCI, effectively terminating her employment at JCI.

99.    Also, within days after Stafford's protected activity, Manpower retaliated against Stafford by ending her assignment at JCI, terminating her employment at JCI.

100.    But for Stafford's protected activity, Defendants would not have terminated her assignment and employment at JCI.

101.    Defendants' act of sending Stafford home on unpaid leave, and terminating Stafford's JCI assignment, was materially adverse, such that a reasonable employee would be dissuaded from lodging a similar complaint.

102.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000e-3, Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

103.    Defendants' unlawful actions were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

### COUNT III

### (Title VII – Sex Discrimination)

15

104.    This Count is lodged against Defendant JCI only.

105.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

106.    Stafford is a woman and was qualified for her position at JCI.

107.    JCI's decision to release Stafford from her assignment was motivated by her sex.

108.    JCI stated it released Stafford from her assignment because of misconduct in violation of JCI's employment policies, but JCI did not terminate or otherwise discipline a male coworker who engaged in similar or worse conduct than that alleged by Stafford.

109.    JCI unlawfully deprived Stafford of equal employment opportunities because of her sex in violation of 42 U.S.C. § 2000e-2(a)(1).

110.    As a direct and proximate result of JCI's violation of 42 U.S.C. §2000e-(2)(a)(1), Stafford suffered actual damages including but not limited to backpay, medical expenses, fear, humiliation, emotional distress, and loss of enjoyment of life.

111.    JCI's unlawful actions were intentional and were done with malice or with reckless indifference to the federally protected rights of Stafford.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.    Issue a permanent injunction enjoining each Defendant, their subsidiaries, related entities, officers, successors, assigns, and all persons in active concern or participation with either Defendant, from engaging in unlawful employment practices

16

which discriminate on the basis of sex, including discrimination, harassment and the creation of a hostile work environment based on sex, and retaliating against individuals for reporting the same, in violation of 42 U.S.C. § 2000e.

B.      Order each Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for female workers and eradicate the effects of its past and present unlawful employment practices.

C.      Order each Defendant to make Stafford whole by providing appropriate back pay, lost benefits, and prejudgment interest, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of Defendants' unlawful employment practices.

D.      Order each Defendant to make Stafford whole by providing compensation for past, present and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

E.      Order each Defendant to make Stafford whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

F.      Order each Defendant to pay Stafford punitive damages for its malicious and reckless conduct as described above, in an amount to be determined at trial.

G.      Grant such relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs for this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its

Complaint.

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN
Regional Attorney

C. FELIX MILLER
Supervisory Trial Attorney

s/*Lauren W. Johnston*
LAUREN W. JOHNSTON, OBA # 22341
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Oklahoma City Area Office
215 Dean A. McGee Ave, Ste. 524
Oklahoma City, OK 73102
Phone: (405) 231-5829; Fax: (405) 231-4375
lauren.johnston@eeoc.gov

*Attorneys for Plaintiff Equal Employment
Opportunity Commission*